FEDERAL GRAIN COMPANY *v.* HAYES GRAIN & COMMISSION COMPANY.

## Opinion delivered November 12, 1923.

SALES—FRAUD IN GRADING OATS.—Where seller sold No. 3 oats, "Kansas City grades and weights," to buyer, and they were graded at Kansas City by a licensed State grain inspector as No. 3 oats, but were graded as No. 4 oats by a Federal grain inspector at destination, and seller's testimony showed that the Kansas City inspection was honestly and correctly made, and no bad faith could be imputed to it, it was error to instruct that, if the grade fixed at Kansas City upon the oats involved in this lawsuit was so erroneous or so far from the true grade as to be the result of a gross mistake, the verdict should be for the buyer; as the Kansas City grading could not be questioned unless the mistake amounted to fraud or bad faith.

Appeal from Pulaski Circuit Court, Second Division; *R. M. Mann,* Judge; reversed.

### STATEMENT OF FACTS.

The Hayes Grain & Commission Company brought suit against the Federal Grain Company for damages for the breach of a written contract of sale of three cars of oats by the defendant to the plaintiff.

The plaintiff is a domestic corporation engaged in selling grain in Little Rock, Ark., and the defendant is a corporation engaged in selling grain at wholesale in Kansas City, Mo. The plaintiffs purchased from the defendant three cars of oats, which were shipped to it from Kansas City, Mo., by the defendant, and received by it at Little Rock, Ark. The oats were shipped with sight draft attached to the bill of lading. The plaintiff paid the draft, and says that it discovered later that the oats were of a grade inferior to the oats purchased, and, in aid of a suit for damages for breach of contract, it attached a car of oats belonging to the defendant at Little Rock, Ark.

The defendant denied liability, and claimed that the oats were of the grade that the contract called for. The contract is as follows:

"Federal Grain Company No. S539.

"Kansas City, Mo., March 29, 1921.

"To Hayes Grain and Commission Co.,
"Little Rock, Ark.

"We confirm sale to you by Farmer Wilson Company of three 60 cap. cars No. 3 white oats at 48½ cents per bu. C. A. F. Little Rock, Kansas City grades and weights, loaded shipment Omaha, Mo. Pac. tonnage, bill to Little Rock. Demand draft. Js: I. M.

"This contract is subject in all respects to the customs, rules and regulations of the Kansas City Board of Trade. Also subject to delay on account of strikes, riots, civil commotion, the elements, embargoes, inability to secure cars or shipping permits, and any other cause over which we have no control.

"Margin agreement as set forth on the back of this confirmation (or contract) is made a part hereof.

"FEDERAL GRAIN COMPANY,

"E. & O. E.                    By (Signed)."

According to the testimony for the plaintiff, one of its representatives discovered that the oats were not of the grade contracted for, and immediately wired the Federal Grain Company to that effect. The plaintiff then had the oats inspected by the Little Rock official Federal inspector, and he graded them No. 4 white. Oats of this grade were not worth more than 43 cents per bushel, which caused a loss to the plaintiff of 5½ cents per bushel on the cars of oats.

The plaintiff also testified as to the number of bushels of oats in the three cars. The oats were inspected at Little Rock for the plaintiff by John F. Miller, licensed grain inspector, and working under the regulations of the Secretary of Agriculture of the United States. He said that he was an experienced grader, and had carefully graded the three cars of oats by taking samples from them in the usual way. The oats were not No. 3 white

oats, but only graded No. 4 white oats, which is an inferior grade.

John Stark was a witness for the defendant. According to his testimony, he was employed by the Federal Grain Company, and bought the three cars of oats in controversy on the floor of the Kansas City Board of Trade and sold them to the plaintiff. They were No. 3 white oats. They were graded by Edward H. Correll, who was a licensed grain inspector at Kansas City, Mo., and was paid by the Missouri State Grain Inspection Department. According to the testimony of this inspector, he graded the oats at Kansas City, Mo., in the usual and customary manner. All three cars were correctly graded by him as No. 3 white oats. The grading was done just before the oats were shipped from Kansas City, Mo., by the defendant, to the plaintiff at Little Rock, Ark.

The jury returned a verdict for the plaintiff, and from the judgment rendered the defendant has appealed.

*Gray, Burrow & McDonnell,* for appellant.

An agreement by contracting parties to abide by the decision of a third person is binding upon the parties, except by showing fraud or gross mistake. 83 Ark. 136; 88 Ark. 213; 88 Ark. 557; 114 U. S. 549; 48 Ark. 522; 68 Ark. 185; 79 Ark. 506; 156 Pac. 443; 155 Pac. 1044; 221 Fed. 612; 139 Pac. 671; 167 Cal. 274; 106 Mass. 373; 71 Mo. 149; 101 Pac. 308; 155 Cal. 419; 108 Ill. App. 248; 66 S. E. 294; 147 N. W. 456; 106 S. W. 930; 68 S. W. 581; 79 Mo. App. 465. The court erred in permitting witnesses Cameron and Miller to testify concerning the inspection and grade of grain at Little Rock. 83 Ark. 136; 88 Ark. 213; 48 Ark. 522; 68 Ark. 185; 79 Ark. 506; 114 U. S. 549. The court erred in giving plaintiff's instruction No. 1, which permitted a recovery on the mere finding of a mistake. 48 Ark. 522. It also erred in modifying and giving instruction No. 2, which permitted the jury to disregard the question of good faith. The evidence was not sufficient to support a verdict for damages.

*Price Shofner,* for appellee.

HART, J., (after stating the facts).    The main reliance for a reversal of the judgment by counsel for the defendant is that the court erred in giving instruction No. 1 at the request of the plaintiff.  The instruction is as follows:

"No. 1.  If you believe from the evidence that the grade fixed at Kansas City upon the oats involved in this lawsuit was so erroneous or so far from the true grade as to be the result of a gross mistake, your verdict will be for the plaintiff."

It will be noted by reading the contract, which we have copied in our statement of facts, that the parties have agreed upon an inspection at Kansas City, Mo., on the grades and the weights.  According to the terms of the contract, when that inspection determined that the oats were of the quality ordered, the plaintiff became bound by its agreement to accept and pay for them at Little Rock, Ark.

Counsel for the defendant claimed that the instruction was erroneous because the mistake which will justify an impeachment of the grain inspector's decision is not mere error of judgment, but is the kind of mistake which amounts to fraud.  They rely upon the principles of law decided by this court in the following cases: *Hot Springs Ry. Co.* v. *Maher,* 48 Ark. 522; *Ozan Lumber Co.* v. *Haynes,* 68 Ark. 185; *Carlile* v. *Corrigan,* 83 Ark. 136, and *Lanier* v. *Little Rock Cooperage Co.,* 88 Ark. 557, and other cases of like character.

In the first cited case it was held that, where parties agree that all questions relating to the quality, quantity or manner of construction of work to be done shall be decided by an engineer in charge of the work, and that his decision shall be final and conclusive, his decision cannot be questioned by either party except for fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment.  The court said that the instructions were misleading and prejudicial

because they did not tell the jury that the errors or mistakes which would avoid the decisions or estimates of the engineer must have been so gross or of such nature as necessarily implied bad faith upon the part of the engineer.

In the application of this principle in the second case cited, the court said that the same rule would apply in case of an agreement for scaling lumber, and held that the correctness of the scaling may be impeached by correct scaling elsewhere, but that evidence must be sufficient to show fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment.

The instruction under consideration is erroneous and prejudicial because it fails to tell the jury that the mistake must be of such a character as to show fraud or bad faith in the inspection of the grain. The omission of the court in this respect is emphasized by instruction No. 2, which was asked by the defendant and given as modified by the court. The instruction as modified is as follows:

"You are instructed that the burden of proof is upon the plaintiff in this case; that is to say, it must establish the allegations of its complaint by a preponderance of the evidence; and that, even though you may find that the oats in question were by mistake graded by the inspector at Kansas City as No. 3 white oats, nevertheless, unless you further find from a preponderance of the evidence that said oats were No. 4 white oats, and that the said inspector by mistake misgraded said oats as No. 3 white oats, then your verdict must be for the defendant."

The modification of the instruction by the court consisted in eliminating from it the submission of fraud or bad faith of the inspector at Kansas City in grading the oats. The error thus committed was material and must be considered as ground for reversal because, under the testimony for the defendant, the inspection at Kansas City was honestly and correctly made. According to the

testimony of the defendant, the inspection was correctly made under the contract, and no bad faith could be imputed to it in any respect whatever.

In view of another trial, we do not pass upon the legal sufficiency of the evidence to support a verdict for the plaintiff.

For the error in giving instruction No. 1 for the plaintiff and in giving instruction No. 2, as modified, the judgment will be reversed, and the cause remanded for a new trial.