The **MERCHANTS COMPANY,**
Appellant,

v.

**BARTLETT AND COMPANY, GRAIN,**
Appellee.

No. 21727.

United States Court of Appeals
Fifth Circuit.

Aug. 4, 1965.

Billy H. Quin, of Brunini, Everett, Grantham & Quin, Vicksburg, Miss., for appellant.

Henry G. Eager, Kansas City, Mo., William E. Suddath, Jr., Jackson, Miss., Watkins & Eager, Jackson, Miss., Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., of counsel, for appellee.

Before BROWN and BELL, Circuit Judges, and HUNTER, District Judge.

GRIFFIN B. BELL, Circuit Judge:

This case comes to us for the second time. See Bartlett & Company, Grain v. The Merchants Company, 5 Cir., 1963, 323 F.2d 501. The question, among others, before the court at that time was the effect of an inspection certificate issued by a federally-licensed grain inspector under a contract providing that the inspection in question was to be conclusive as between the parties on the issue of the grade of corn purchased by Merchants from Bartlett. The purchase involved four barge loads of No. 2 yellow corn totalling 120,000 to 125,000 bushels. Only one of the barge loads, 31,250 bushels, is in issue. Inspection in accordance with United States grain standards at the point of origin was the method chosen by the parties to settle whether the tendered corn conformed to the grade requirement of the contract.

The corn was loaded at Nebraska City, Nebraska. It was certified as No. 2 yellow by the inspector and Merchants paid Bartlett for the corn on the basis of the certification while it was en route and

before making its own inspection. Merchants in turn sold the corn to O. J. Walls as No. 2 yellow for delivery at Guntersville, Alabama. Walls refused to accept the corn upon arrival of the barge at Guntersville on the ground that it was below the contract grade. A federal inspection made at that time disclosed that approximately half of the corn was grade No. 1 while the other half was No. 4 The grade depended on the amount of cracked corn and foreign matter in the sample taken. This inspection also disclosed that some of the foreign matter was wheat, sour, rotten and molded at the time of this latter inspection, and because of this and the July heat it was necessary to remove the corn from the barge and have it reworked as quickly as possible. Walls agreed to render this service for the account of Merchants, and this suit involves the amount paid Walls by Merchants for the reworking.

Judgment was rendered for Merchants on the prior trial on a finding by the District Court that the barge was loaded in Nebraska City with an excessive amount of moldy wheat which contaminated the cargo, and that the inspector's certification at origin was erroneous and inaccurate, and failed to reveal the true condition of the cargo. The District Court ruled that Merchants was therefore not bound by the certificate.

On appeal, we applied the law of Missouri to the question presented in view of the negotiations for and the acceptance of the contract in Missouri. We pointed out that this was not the ordinary situation where a buyer has the right to inspect goods purchased from a distant vendor. Instead, it was a case where the parties had agreed to abide by the judgment of a third person, and that judgment, if honestly exercised, is binding on the purchaser. We also pointed to the Missouri rule that the inspection certificate of the third party under a contract of the type in question is binding on both parties in the absence of fraud, or such gross mistake as would imply bad faith. Massman Const. Co. v. Lake Latawana Association, 1948, 240 Mo.App. 469, 210

S.W.2d 398. The result of such an inspection may not be set aside because of mistake. Rogers v. Rehard, 1906, 122 Mo. App. 44, 97 S.W. 951; Federal Grain Company v. Hayes Grain and Comm'n Co., 1923, 161 Ark. 51; 255 S.W. 307. And a mere difference in grade as determined by a destination inspection compared to the origin inspection will not show fraud or gross mistake from which fraud or bad faith could be inferred. Gratiot St. Warehouse Co. v. Wilkinson, 1902, 94 Mo.App. 528, 68 S.W. 581; Federal Grain Company v. Hayes Grain and Comm'n Co., supra. See also Alabama Chemical Company v. International Agriculture Corp., 1926, 215 Ala. 381, 110 So. 614.

Being thus of the view that the District Court had applied an improper rule, i. e., mere error on the part of the inspector, we reversed and remanded so that the court might ascertain whether fraud, bad faith, or gross mistake amounting to fraud existed which would warrant setting the certificate aside. The opinion stated:

> " * * * the district court may wish to consider whether the difference between the grade certified by the inspector and the actual grade of the corn at the time of loading is so great as to constitute a mistake which would show fraud on the part of the inspector. Also, the court might consider whether the alleged deviations from prescribed inspection standards and the customary practices are flagrant enough to show bad faith or failure to exercise an honest judgment. If these show only a simple mistake or a mere error in judgment, the certificate should stand as conclusive." 323 F.2d at 509.

On remand, the parties stipulated that the matter would be resubmitted without additional evidence. Upon reconsideration in the light of the standard laid down by this court, judgment was rendered for Bartlett instead of Merchants. The District Court concluded that the evidence was insufficient to support a

charge of fraud or bad faith, even though it was clear from the evidence that the certificate of the inspector was erroneous. We find ample support for this conclusion in the record and for that reason it must stand.

The inspection was made in the customary manner. It disclosed that some of the corn being loaded in the barge was of grades 3 and 4. This condition was corrected by adding No. 1 corn and the inspector was of the opinion that the load would average out as No. 2 and thus meet the specification of the contract. The validity of his judgment, based on the same samples, was substantiated in due course by the next higher inspection authority, the Federal Grain Supervisor in Omaha. The sum of the situation demonstrates an error in the certificate. The findings and conclusions of fact which in substance were that the proof fell short of sustaining a charge of fraud, bad faith, or such gross mistake as would amount to fraud are not clearly erroneous and there the matter ends from a factual standpoint. Rule 52(a), F.R. Civ.P. Nor do we find any error from the standpoint of law.

Affirmed.

JOHN R. BROWN, Circuit Judge, (concurring):

As we are committed, wisely I think, to the principle that one review of the evidence is enough in a diversity case, Lincoln National Life Ins. Co. v. Roosth, 5 Cir., 1962, 306 F.2d 110, and the scope of further fact findings was a narrow one under our prior mandate, I concur that F.R.Civ.P. 52(a) prevents us from overturning the District Court's action. I do so not without substantial misgivings. For fraud in law, if not fraud in fact, seems plainly revealed. No one had to know better than the shipper the quality of the grain being loaded and delivered. The facts show spectacularly that out of a barge load of 1,750,000 pounds, over one-half, 900,000 pounds graded 4 and 850,000 pounds graded 1. The so-called expert grader proceeded on the naive assumption that if these substantial quanti-

ties of grade 4 (loaded in bow hatches 1, 2, 3, 4, and 5) were mixed with other grain grading 1 loaded elsewhere in the barge, the mass would grade out as grade 2. But it was not mixed. It was not supposed to be mixed in the barge. And on the appellant's theory, twice sustained by the District Court, it was the presence of the forbidden impurities accounting for the lowered grade which caused the damage by moisture, etc., not only to that portion but, worse, to all remaining grain in the barge. When, in determining whether "deviations from the prescribed inspection standards" by the inspector were "flagrant enough to show bad faith or failure to exercise a honest judgment," it is tested on an objective basis, not the subjective one of the inspector's good or evil heart, the proper answer is so plainly indicated that I am apprehensive that the trial Judge reached his now binding conclusion from an incorrect legal standard. But as this is not expressly revealed, F. R.Civ.P. 52(a) compels affirmance.