[No. 5398.]

## THE EMPSON PACKING COMPANY v. CLAWSON.

1. Contracts — Execution — Determination by Third 'Person — Conclusiveness.

Where parties to a contract designate one who is authorized to determine questions relating to its execution, and stipulate that his determination shall be final and conclusive, both parties are conclusively bound by his determination of such matters except in case of fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment.—P. 192.

2. Same.

A contract required a person to plant and cultivate a crop of peas, and collect and deliver the same to a packing company, the latter agreeing to receive and pay a specified price for the peas delivered in proper condition for canning; and the contract further provided that certain employees of the packing company should be the sole judge of the proper condition of the crop for canning. Held, that the judgment of such designated persons is conclusive in the absence of fraud or gross mistake implying bad faith.—P. 193.

3. Same—Pleading.

A party to a contract providing that the determination of a third person as to the performance of the contract shall be conclusive, who desires to avoid the determination of the third person, must allege facts presenting fraud or implying bad faith or a failure to exercise an honest judgment by such third person.—P. 194.

4. Same—Construction.

A contract provided that plaintiff should plant and cultivate a crop of peas, and collect and deliver the same to a packing company; that the peas should be suitable for canning purposes; that certain employees of the company should be the sole judge

of the proper condition of the crop; that plaintiff should submit samples of crops to the canning company a few days before the peas were ready to harvest; and that the company should advise what day the delivery should be made. Held, .that the company, upon notification by plaintiff that the crop was about ready to be harvested, must exercise due diligence in examining the crop to determine its condition with respect to fitness for canning, and plaintiff is entitled to recover if the company failed .to exercise due care and prevented a delivery at a time when the crop was in proper condition.—P. 197.

5. **Contracts—Performance Prevented by Other Party.**

Where the performance of an obligation is prevented by one of the parties to a contract, the party thus prevented from discharging his part of such obligation is to be treated as though he had performed it.—P. 198.

· 6. **Appellate Practice—Cause Submitted—Grounds for Reversal** · **on One Erroneous and One Correct Theory.**

Where a cause was submitted to the jury on two theories, one erroneous and one correct, and the court, on appeal, cannot determine which theory the jury followed, the judgment must be reversed.—P. 198.

*Appeal from the District Court of Boulder County. Hon. Jas. E. Garrigues, Judge.*

Action by Garrett Clawson against The Empson Packing Company. From a judgment for plaintiff, defendant appeals.     .     *Reversed and remanded.*

Messrs. FILLIUS & DAVIS and Mr. ERNEST MORRIS, for appellant.

Mr. H. M. MINOR and Mr. ALBERT DAKAN, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The Empson Packing Company and Garrett Clawson entered into a contract, whereby Clawson contracted to plant and cultivate a certain acreage of peas, and to collect and deliver the same to the packing company. The company agreed to receive

the peas that Clawson delivered in proper condition for canning, and to pay him a specified price per hundred pounds. The contract contained this stipulation:

"It is stipulated and agreed that all peas grown on this contract shall be delivered at the factory of The Empson Packing Company at Longmont, Colorado, in suitable condition for canning purposes. The largest peas must be tender and in best condition for eating. All pods must be green when vines are cut. If they are white they will be too old and will not be accepted. The foreman, superintendent, or some officer of The Empson Packing Company, is to be the sole judge of the proper condition of the crops for canning.

"Party of the first part (Clawson) is to submit sample of crops to party of the second part a few days before peas are ready to harvest, and they will be advised what day to deliver them."

The company refused to accept part of the crop, and Clawson brought suit to recover damages for the alleged failure of the company to comply with this contract.

In his complaint, after setting out the contract *haec verba*, plaintiff alleged, in substance, that he had complied with its terms upon his part, but that the company refused to receive or pay for about two-thirds of his crop, which refusal was without legal reason or excuse therefor, whereby the plaintiff lost this part of his crop, to his damage, in the sum of five hundred dollars. To this complaint the defendant company answered, in which it denied that plaintiff cultivated and raised a crop of peas of the quality required of him by the terms and conditions of his contract; denied that it refused to receive or pay for any peas raised by him under his contract that were of the quality and kind specified, and alleged

that the peas tendered by plaintiff were not of the quality as specified in the contract; that they were not in suitable condition for canning; that the peas were scalded and wrinkled; that they were carefully inspected, as provided in the contract, by the president of the company, its field foreman and superintendent, for the purpose of ascertaining whether they were in proper condition for canning, and that each and all of these persons determined that they were not.   To this answer the plaintiff filed a replication, wherein he averred that he notified the defendant that the peas were in proper condition for delivery, and that he was ready and willing to deliver them, and that at the time of such notice they were in the condition required by the contract, and that if they were not in the condition that the contract required when delivered or tendered, it was because of the refusal of the defendant to receive them sooner. He further alleged that the field superintendent of the defendant had been to the field where the peas were growing, and well knew that they were ready and in proper condition to deliver, but, disregarding his duty, and arbitrarily acting in bad faith, declined and refused to state that the peas were ready to deliver, and, therefore, denied that the officials mentioned in the defendant's answer examined and determined when the peas were in proper condition for delivery, but willfully, negligently, and in bad faith declined and refused to do so, and to notify plaintiff when to deliver them, contrary to, and in disregard of the obligations imposed upon it by the contract. The issues thus made were submitted to a jury. Verdict was rendered for plaintiff.   From a judgment thereon the defendant appeals.

Over the objection of the defendant, testimony was admitted on behalf of the plaintiff, tending to prove that the peas were in a proper condition for

canning, at the time he offered to deliver them to the defendant at its factory.

The testimony on behalf of the defendant was to the effect that the peas were unfit for canning purposes because they were scalded.

The court instructed the jury to the effect that they should determine from the testimony whether or not the peas tendered by plaintiff were scalded, and that they might determine from the testimony bearing on the condition of the peas at the time of their rejection for the purpose of determining whether the defendant exercised the right reserved in the contract to determine the proper condition of the peas for canning, in a fair and impartial manner, or arbitrarily and prejudicially to the plaintiff; and that defendant was bound to exercise the right of determining the condition of the peas in a manner satisfactory to the mind of a reasonable person.

The admission of the testimony for the purpose indicated, as well as the instructions given, was error. The parties to the contract selected the persons who should be the sole judges of the proper condition of the peas for canning. Their decision that they were not was binding and conclusive upon them, and could not be assailed, except for fraud, or such gross mistake as would indicate bad faith, or that they had failed to exercise an honest judgment in discharging the duty imposed upon them. In other words, the rule of law is, that where parties to a contract designate a party who is authorized to determine questions relating to its execution, and stipulate that his determination shall be final and conclusive, both parties are conclusively bound by his determination of those matters which he is authorized to determine, except in case of fraud, or such gross mistake upon his part as would necessarily imply bad faith, or a failure to exercise an honest

judgment.—*Martinsburg & Potomac R. R. Co. v. March,* 114 U. S. 549; *Sweeney v. United States,* 109 U. S. 618; *McAvoy v. Long,* 13 Ill. 147; *Elliott v. M. K. & T. Ry. Co.,* 74 Fed. 707; *Wallace v. Curtiss,* 36 Ill. 156; *Lucas Coal Co. v. Del. & H. Canal Co.,* 23 Atl. (Pa.) 990; *Nofsinger v. Ring,* 71 Mo. 149; *Chicago & Santa Fe R. R. Co. v. Price,* 138 U. S. 185; *Kihlberg v. United States,* 97 U. S. 398; *Lynn v. B. & O. R. R. Co.,* 60 Md. 404, 45 Am. Rep. 741; *McAuley v. Carter,* 22 Ill. 53; *Chocktaw & M. R. Co. v. Newton,* 140 Fed. 225.

In the case at bar the parties selected certain officials of the defendant company, and stipulated that the fitness of the peas for canning should be determined solely by them. Necessarily, this stipulation rendered their judgment conclusive in the absence of the conditions under which it could be assailed. By this stipulation the parties did not agree that the correctness of the judgment of the persons agreed upon to determine the fitness of the peas for canning should be submitted to a court, a jury, or the opinion of any one, other than those designated. Courts have no authority to abrogate or modify contracts which parties have deliberately entered into. On the contrary, it is their duty to enforce them as they find them, and not to inject provisions by implication which the plain and unambiguous language evidencing the contract does not wararnt. · What might constitute such fraud, bad faith, or a failure to exercise an honest judgment by the persons designated to determine the fitness of the peas for canning, we will not undertake to say, because there is no evidence tending to prove that any of these persons were guilty of such acts as would permit the plaintiff to have assailed their judgment. They examined the peas, they tested them, and determined that they were unfit to can, and their judgment in

this respect concludes the plaintiff on the subject of the condition of the peas which he tendered to the defendant.

The attention of counsel is directed to the pleadings in so far as they relate to the question already determined, and although we shall not indicate our views on the sufficiency of the pleadings, to raise that question, because no point is made by counsel with respect thereto, we deem it proper to suggest that in order to raise the question of fraud, or such action as necessarily implied bad faith upon the part of those who were to determine the condition of the peas for canning, or failure to exercise an honest judgment in discharging the duty imposed upon them, it may be necessary to plead facts presenting these questions.—*Martinsburg & Potomac R. R. Co. v. March, supra.*

At the conclusion of the testimony on the part of plaintiff, defendant moved for nonsuit, and after rendition of verdict in favor of plaintiff, the defendant moved for judgment *non obstante veredicto.* Both these motions were properly denied, because there was another issue in the case from that we have considered. By the replication an issue was tendered, without objection on the part of the defendant, to the effect that defendant was notified when the crop would be in a suitable condition for delivery and canning; that he, plaintiff, was ready and willing to deliver it at the time specified; that defendant never consented to receive the peas until several days after the date when defendant was notified that the crop was ready for delivery, and that if the peas were not in the condition stipulated in the contract at the time he delivered or tendered them to the defendant, it was because of the refusal of the latter to receive them sooner. There is testimony to the effect that on a Friday Clawson notified the field foreman of

defendant that the peas would be ready for delivery the following Monday or Tuesday; that the foreman stated he could not promise to come that soon; that on Monday plaintiff went to the factory and saw the field foreman and the president of the company, and asked them if he could not commence cutting the peas. The foreman replied that he could not promise. Clawson again informed him that he thought the peas were ready to cut, and again asked him if he could not begin cutting on Wednesday, to which he replied that he could not promise. Thursday or Friday after the first notification was the first time that the company consented to have the peas cut. There is also testimony to the effect that on Monday, the date designated by Clawson when the peas would be ready to cut, that they were in proper condition for canning. A witness on beahlf of Clawson testified that he met the field foreman on Saturday subsequent to the day plaintiff says he notified the defendant when the crop would be ready to harvest, when he drove into the patch of peas; that he, the witness, informed him that it would be necessary to deliver the peas the first of the next week, to which he replied, "Yes; but if there comes a shower you will be surprised to see how long they will keep green." Clawson testified that the reason assigned by the defendant for not receiving the peas when they were delivered, or tendered for delivery, was that they were too ripe, while, as we have previously stated, the objection to receiving them, given on behalf of the defendant, was that they were scalded.

There is also other testimony bearing on the issue made by the replication, to which it is not necessary to refer. It controverts or contradicts, in some respects, that to which we have referred, so that it would be the province of the jury to determine the facts, and we have only referred to the testimony

noticed for the purpose of showing that there was evidence tending to prove the issues made by the replication.

The contract between the parties contained mutual promises. Clawson agreed to grow a certain acreage and deliver the crop to the defendant, and not sell to any other person without its consent. The defendant agreed to receive all peas delivered in a proper condition for canning. The contract specified certain tests by which the fitness of the peas could be determined. It further provided that Clawson should submit samples of crops to the company a few days before the peas were ready to harvest, and that he would be advised what day to deliver them. It is contended by counsel for appellant (which is, no doubt, correct) that the canning of peas is a science, and that it requires skill and expert knowledge to determine at just what stage of the development or maturity the peas should be cut and canned. It also appears from the testimony that the time within which the peas must be harvested after they reach the proper stage of maturity for canning is very short. It is evident from the contract that the parties intended that the crop should be harvested at a time which would give the best results to both. The defendant, through its officials, was to be the judge of the proper condition of the crops for canning; but, by the contract, it was also necessary for it to advise Clawson when the crop should be delivered. In order to do this, it was necessary upon its part to notify Clawson when the crop should be harvested. In discharging this obligation, which it assumed, it was incumbent upon the defendant to exercise due diligence in examining the peas for the purpose of determining their condition with respect to their fitness for canning. It could not be negligent in this respect and escape liability to take and pay for the

crop, if that negligence resulted in rendering the peas unfit to can. The testimony discloses that the defendant was notified two or three days in advance of the time when the crop would be ready to deliver, so that the peas would be in the condition which the contract contemplated. It appears, according to the testimony on the part of plaintiff, that the field foreman examined the crop two days before the day plaintiff claimed it would be ready to be harvested; that at this time he did not assert that the peas were not sufficiently mature to harvest, but suggested that if there should be a shower, the peas would continue to keep green, thus indicating that they were in a proper condition then to harvest, but they would remain so for a while in the event of a rain. During the time which Clawson contends the peas were ready to be delivered, he was importuning the defendant to furnish a cutter and permit him to harvest and deliver the peas. Defendant did not consent to his delivery of the peas until two or three days after the time when he said they were ready for delivery. It is his contention that when they were delivered, if they were not in proper condition for canning, it was because they were too ripe, which, he says, is the objection the defendant made. It thus appears, according to the claim of Clawson, that the reason why the peas were not up to the standard required by the contract, was because the defendant had not performed the obligation imposed upon it, to exercise due care in ascertaining the condition of the crop for canning, and in not permitting him to deliver them at a time when it was in a proper condition. If the testimony established these facts, then the plaintiff was entitled to recover, for the obvious reason that the failure of the defendant to discharge the obligations which it assumed under the contract was the cause why the peas were not fit for canning. He who

prevents a thing from being done may not avail himself of the nonperformance which he has, himself, occasioned; or, if the performance of an obligation is prevented by one of the parties to a contract, the party thus prevented from discharging his part of such obligation is to be treated as though he had performed it.—*Palm v. O. & M. R. R. Co.,* 18 Ill. 217; *Hunt v. Test,* 8 Ala. 713; *Dolan v. Rodgers,* 44 N. E. (N. Y.) 167; *Marshall v. Craig,* 1 Bibb 379, 4 Am. Dec. 647; *Davis v. Crawford,* 12 Am. Dec. 682.

There was, however, as we have stated, some conflict in the testimony with respect to the condition of the crop at the time when Clawson claimed he notified the defendant it was ready for delivery. Even though the case may have been properly submitted to the jury, under the issues made by the replication, we cannot affirm the judgment, because it appears that the case was tried by plaintiff and by the court submitted to the jury, upon two theories: (1) Whether or not the peas tendered were rejected by the defendant in good faith, or that they were in such condition as to have reasonably satisfied the defendant; and (2) the condition of the peas at the time Clawson claimed they were ready for delivery, and the failure of the defendant to discharge the obligation upon it imposed in determining their condition at this time. The first we have said was erroneous; and as we cannot tell from the record which theory the jury followed in rendering a verdict, the judgment must be reversed, and it is so ordered.

The judgment of the district court is reversed and the cause remanded for a new trial, with leave to the parties to amend their pleadings as they may be advised.      *Reversed and remanded.*

CHIEF JUSTICE STEELE and MR. JUSTICE CAMPBELL concur.